UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GEORGE DANIEL,

            Plaintiff,

      v.

JOSEPH RICHARDS, et al.,

            Defendants.

Case No.  13-cv-02426-VC

**ORDER GRANTING SUMMARY JUDGMENT MOTIONS; DENYING MOTIONS FOR LEAVE TO AMEND THE COMPLAINT**

Re: Dkt. Nos. 124, 126, 134

## I.      INTRODUCTION

This case stems from the arrest and subsequent detention of Plaintiff George Daniel. On the night of May 16, 2012, Daniel was arrested by Santa Rosa Junior College District police officers Joseph Richards and Brittany Hawks ("the SRJC defendants"). He was then booked and spent the two and a half days in jail at the Sonoma County Main Adult Detention Facility, which is operated by Sonoma County, Sheriff Steve Freitas, and Assistant Sheriff Randall Walker ("the County defendants").

Daniel has sued the SRJC defendants under 42 U.S.C. § 1983, alleging that they violated his Fourth Amendment rights when they detained and arrested him. The SRJC defendants have moved for summary judgment, which is granted. Daniel has also moved to amend his complaint to add two new SRJC officers, Officers Willat and Brownlee, who are the supervising officers of Richards and Hawks. The motion to amend to add these two defendants is denied.

Daniel has also brought a 42 U.S.C. § 1983 claim against Sonoma County, Sheriff Steve Freitas, and Assistant Sheriff Randall Walker for alleged violations of Daniel's Fourth Amendment rights that occurred while Daniel was detained at the Main Adult Detention Facility ("MADF"). The Sonoma County defendants have moved for summary judgment, which is granted. Daniel has moved to amend his complaint to add several officers with whom Daniel interacted during his

time at MADF. This motion is denied.

## II.     SRJC DEFENDANTS

### A.  Motion for Summary Judgment

Daniel has alleged that Officers Richards and Hawks violated his Fourth Amendment rights by detaining him without reasonable suspicion, arresting him without probable cause, and using excessive force during their arrest. And Daniel argues – in both his opposition brief and in an affidavit attached to his brief – that genuine fact disputes make this case unsuitable for summary judgment. But none of the disputes is material to whether Richards and Hawks violated Daniel's Fourth Amendment rights.[1] To the contrary, the undisputed evidence shows that Richards and Hawks had reasonable suspicion to detain Daniel, had probable cause to arrest him, and used reasonable (and minimal) force in their interactions with him.

The undisputed facts, viewed in a light most favorable to Daniel, are as follows. Richards and Hawks were on routine patrol on the night of May 26, 2012 when a police dispatch indicated that a burglar alarm was going off at the Ridgway Swim Center in Santa Rosa, California. Richards and Hawks responded to the dispatch because they were already in the area. They conducted a perimeter search of the Swim Center and noticed that a door was open. As they repositioned to get a view inside the Swim Center, they saw a man, who would later be identified as Daniel, riding a bicycle at what the officers described as a "faster than medium" pace through the parking lot of the Swim Center.

The officers suspected that Daniel may have been involved in the burglary and that he was attempting to get away. They shined a flashlight at Daniel, identified themselves as police officers, and ordered him to stop. Daniel turned and glanced at the police officers, but did not know what

---

[1] There are several inconsistencies between Daniel's sworn deposition testimony and the affidavit attached to Daniel's opposition brief. The defendants have highlighted these inconsistencies in their reply brief and, in arguing that Daniel cannot create a genuine issue of fact by contradicting his sworn deposition testimony with a self-serving affidavit, have seemingly asked the Court to declare Daniel's affidavit to be a "sham affidavit." *See Van Asdale v. International Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) ("[T]he district court must make a factual determination that the contradiction was actually a 'sham.'") (internal quotation marks omitted). But because the contradictions create no material factual disputes with respect to the alleged Fourth Amendment violations, the Court need not address the issue of whether Daniel's affidavit is a sham affidavit.

United States District Court
Northern District of California

the officers said and did not realize they were police asking him to stop. Because he believed it might have been someone trying to mug him, he rode away on his bike. The officers followed Daniel, initially with Hawks chasing after Daniel on foot and Richards in the police car, but after a short distance Richards picked Hawks up and they both followed Daniel in the police car. They turned on their emergency lights and, at times, their siren, but Daniel continued to ride his bicycle away from them, running through at least three stop signs and leading the officers to believe that Daniel was attempting to evade them. Daniel claims he did not realize the officers were trying to get him to stop, but his deposition testimony shows that he continued to ride several blocks without stopping even after he noticed the flashing red lights and the siren. Finally, roughly a half mile from the Swim Center, after Daniel slowed down, Richards pulled the car around Daniel and parked diagonally in front of him, which led Daniel to stop.

Richards and Hawks, both in full police uniform, got out of the police car and ordered Daniel to stop. They approached him on his bicycle, and Hawks grabbed Daniel's left arm while Richards grabbed his right arm. Daniel alleges they grabbed him violently. Once Daniel was off the bicycle, Richards placed him in handcuffs. Although Daniel later claimed that the handcuffs were too tight and were painful, he has no recollection of complaining to the officers at that time.

Richards and Daniel then had a back-and-forth, with Richards repeatedly asking Daniel for identifying information and Daniel refusing to provide it and asking Richards what authority he had to request that information. Daniel also repeatedly asked Richards what authority Richards had to stop him. At one point during the stop, Daniel walked to the front of the police car where Hawks was standing and asked Hawks her name; Hawks did not answer and did not engage with Daniel.

Also during the stop, Richards searched Daniel's person and a small canvas bag that was attached to Daniel's bike. Richards did not find any weapons or any dangerous objects, but he did find two bank cards which included Daniel's name, and then asked Daniel if his name was George Daniel. Daniel again refused to answer the question, as well as several subsequent questions, including whether Daniel had been inside the Swim Center. Daniel informed Richards that he would not answer any questions without speaking with counsel.

1    Near the end of the stop, Richards told Daniel that Daniel could provide identifying

2    information and be released with a citation, or he would be taken to jail. Daniel again refused to

3    provide identifying information, and Richards told Daniel that he was under arrest for willfully

4    delaying and resisting the orders of a police officer, and for evading and failure to comply with

5    lawful orders. At this point, Daniel said, "I demand that you immediately take me before a

6    magistrate."

7    The officers took Daniel to the SRJC District Police Station. There, Daniel complained

8    about the handcuffs being too tight, so Richards loosened them, and once Daniel complained a

9    second time, Richards said he could not loosen them further, but he instead attached a second set

10   of handcuffs so that Daniel could keep his arms farther apart. Daniel was booked into Sonoma

11   County jail, after which neither Richards nor Hawks had any further contact with him.

12   These undisputed facts show that Richards and Hawks did not violate Daniel's Fourth

13   Amendment rights. Based on the totality of the circumstances, Richards and Hawks clearly had

14   reasonable suspicion for stopping Daniel, as they had "a particularized and objective basis for

15   suspecting legal wrongdoing." *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks

16   omitted). They saw Daniel riding his bicycle away from the scene of a suspected burglary. When

17   they ordered him to stop, Daniel ignored them and rode away, continuing for several blocks even

18   after the officers activated their emergency lights and siren. From their perspective, it was

19   reasonable to believe that Daniel was attempting to evade them. And by the time they stopped

20   him, not only did the officers have reasonable suspicion that Daniel may have been involved in a

21   burglary; they had reasonable suspicion that he was willfully fleeing officers and that he had

22   violated various traffic laws.

23   The same is true with respect to their probable cause for arresting him. At the time that

24   Richards placed Daniel under arrest, "the facts and circumstances within [Richards'] knowledge

25   and of which [Richards] had reasonably trustworthy information were sufficient to warrant a

26   prudent man in believing that the suspect had violated a criminal law." *Grant v. City of Long*

27   *Beach*, 315 F.3d 1081, 1085 (9th Cir. 2002) (internal quotation marks omitted).  Daniel's refusal to

28   dispel the officers' suspicion that he'd attempted to break in to the Swim Center contributed to this.

United States District Court
Northern District of California

4

And regardless of whether Richards had probable cause to arrest Daniel for attempted burglary, Richards certainly had probable cause to arrest Daniel for willfully resisting, delaying or obstructing a peace officer in the discharge of his duties (Penal Code § 148(a)(1)); for failure to move to side of the road and yield to an emergency vehicle (Vehicle Code § 21806(a)(1)); and for running through stop signs on his bicycle (Vehicle Code § § 21200(a) and 22450(a), which requires bicyclists to obey all Vehicle Code provisions that apply to motorists). Daniel's own perception of whether he was being pursued by the officers is immaterial.

Further, the evidence shows that neither Richards nor Hawks used excessive force in detaining or arresting Daniel, as "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Hawks and Richards grabbed Daniel's arms to prevent him from fleeing, but there is no indication that this was excessive or caused Daniel any harm. Richards placed Daniel in handcuffs to detain him once Daniel was off his bicycle, and kept him in handcuffs until Daniel was booked in the Sonoma County jail, but the undisputed facts show that, rather than using excessive force in placing the handcuffs on Daniel, Richards actually took action to alleviate Daniel's discomfort each time that Daniel complained the handcuffs were too tight.[2]

Because the undisputed evidence shows that neither Richards nor Hawks violated Daniel's Fourth Amendment rights, summary judgment is granted in favor of the SRJC defendants, Officers Richards and Hawks.

## B.  Motion for Leave to Amend

Daniel's motion for leave to amend seeks to add two SRJC Officers, Officers David Willat and Robert Brownlee, the two supervising officers who signed Richards' and Hawks' incident reports. Daniel does not allege that he had any personal interaction with either Willat or Brownlee,

---

[2] Daniel's complaint does not explicitly assert a Fourth Amendment violation in connection with Richards' search of Daniel's person and property. But even if Daniel had alleged a violation for an improper search, the undisputed evidence again shows no constitutional violation; because Richards' search was a "search incident to arrest," which can occur immediately prior to an arrest, *See Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980), Richards had the right to inspect Daniel's person and property which was an extension of his person in order to search for weapons or other dangerous items.

United States District Court
Northern District of California

1    and therefore they could only be liable to the extent that Richards and Hawks were liable. Because

2    Richards and Hawks did not violate Daniel's constitutional rights, the motion to amend to add

3    Willat and Brownlee is denied.

4    **III.       COUNTY DEFENDANTS**

5         **A.  Motion for Summary Judgment**

6              Daniel has sued the County defendants under 42 U.S.C. § 1983, alleging his constitutional

7    rights were violated while he was detained at the Main Adult Detention Facility in Sonoma

8    County. He alleges that his jailers pulled his arms behind his back, forced him to lie naked in a

9    holding cell with only a blanket, and refused to allow him to make a telephone call or to take him

10   to a magistrate for purposes of setting bail. But because Daniel did not sue the individual jailers,

11   but rather only the County of Sonoma, Sheriff Freitas, and Assistant Sheriff Walker, and because

12   the Court's prior order instructed that discovery on Daniel's *Monell* claim against the County was

13   stayed pending a determination of whether Daniel had suffered any constitutional violation, the

14   only two claims ripe for summary judgment are: (1) whether Freitas and Walker violated Daniel's

15   due process rights by maintaining a jail policy in conflict with the rights outlined in California

16   Penal Code § 810, which requires someone in charge of a jail to assist an arrested person with

17   contacting a magistrate for the purpose of setting bail; and (2) whether Freitas and Walker violated

18   Daniel's Fourth Amendment rights because of their supervisory role in promulgating or being

19   complicit in a policy of torturing inmates who do not cooperate with officers' orders.

20             With respect to the first claim, Daniel did not suffer from a due process violation because

21   MADF's bail policy – namely, adopting a criminal bail schedule in the amount specified by the

22   Sonoma County Superior Court, and advising inmates through the inmate manual about their right

23   to request release or a reduced bail through the courts – recognizes the same liberty interest as

24   outlined in California Penal Code § 810. *See Galen v. County of Los Angeles*, 322 F.Supp.2d

25   1045, 1058 (C.D. Cal. 2004)(holding that a similar policy in Los Angeles County satisfied

26   California Penal Code § 810), *overruled on other grounds by Galen v. County of Los Angeles*, 477

27   F.3d 652 (9th Cir. 2007).

28             With respect to the second claim, Daniel has not presented sufficient evidence to support

United States District Court
Northern District of California

6

his contention that Freitas and Walker promote a policy of mistreating or torturing inmates. Even

assuming for purposes of this motion that Daniel did in fact suffer a constitutional violation while

he was at the jail, he has not a raised a genuine dispute as to whether Freitas and Walker have

supervisory liability under 42 U.S.C. § 1983. Freitas and Walker cannot be liable through a theory

of vicarious liability, *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); rather, they either

must have personally participated in Daniel's constitutional harm, knew of the harm yet failed to

stop it, or implemented and advanced a policy that was itself the cause of Daniel's harm. *See, e.g.*,

*Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.

1989). Daniel acknowledges that neither Freitas nor Walker was personally involved in his

incarceration, and he acknowledges that there is no written policy of torturing inmates who do not

cooperate. In an attempt to demonstrate that MADF has a widespread practice or custom of

mistreating inmates who do not answer questions, Daniel attached several affidavits from other

individuals who documented similar experiences. But of these affidavits, only five concern

individuals' treatment while incarcerated at MADF, and much of the information contained in the

affidavits is inadmissible hearsay, while other allegations are a bit vague. *See FTC v. Publ'g*

*Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997)("[a] conclusory, self-serving affidavit,

lacking detailed facts and unreasonable inferences, is insufficient to create a genuine issue of

material fact"). Daniel also failed to cooperate with the County defendants during the discovery

process in their effort to depose these affiants. *See* County Defendants Reply Brief, Myers Decl.

(Dkt No. 170-1); Ostello Decl. (Dkt. No. 170-2). What's more, most of the affidavits suggest that

the individuals were placed in a holding cell because they had expressed suicidal thoughts, or at

least the jailers or medical personnel at the jail believed the inmates might be suicidal, which

suggests there may have been good reason for the jailers to hold them there.[3] Yet even crediting

the non-hearsay portions of these five affidavits as true – including the allegations of excessive

force – and considering them all in the light most favorable to Daniel, they do not raise a genuine

dispute with respect to Freitas' and Walker's liability, because they do not indicate a type of

---

[3] MADF also submitted evidence indicating that the Sonoma County Detention Division is in
compliance with all applicable mental health standards.

United States District Court
Northern District of California

1    prisoner mistreatment so severe, persistent and widespread that Freitas and Walker would have

2    knowledge of it. Accordingly, summary judgment is granted for Freitas and Walker. And because

3    Daniel has failed to present a genuine issue of material fact on whether Freitas and Walker

4    maintained a policy of torturing inmates, by definition there is no *Monnell* liability.

5    **B. Motion for Leave to Amend**

6         Daniel has sought leave to amend his complaint to add as defendants the individual

7    officers who allegedly mistreated him in the jail. Even though Daniel could have, with minimal

8    diligence, discovered the identity of these people long ago, the Court might normally allow

9    amendment in circumstances like this, because Daniel purports to be representing himself, and as a

10   pro se plaintiff he might be assumed not to understand the consequences of naming the Sheriff and

11   Assistant Sheriff while omitting the individuals. But two factors peculiar to this case argue against

12   granting leave to amend.

13        First, Daniel's original complaint is quite sophisticated for a pro se plaintiff and

14   demonstrates an understanding of the difference between Section 1983 liability for the

15   establishment of a policy and Section 1983 liability for conduct by an individual. Perhaps this is

16   because Daniel is himself sophisticated, or perhaps it's because he received help from someone.

17   Either way, the manner in which the original complaint is drafted (and for that matter the amended

18   versions of the complaint) preclude a finding that Daniel's failure until now to try to name the

19   individuals at the jail could be chalked up to the ignorance of a pro se plaintiff about the proper

20   parties to sue in a Section 1983 case.

21        Second, Daniel has, for no apparent purpose other than to make things difficult for the

22   defendants, brought a parallel action in Sonoma County Superior Court based on all the

23   misconduct he alleges in this lawsuit.  The Superior Court recently entered summary judgment in

24   favor of the SRJC officers, but state-law claims remain against the County and the Sheriff based

25   on Daniel's alleged mistreatment in jail, and the Superior Court has allowed Daniel to amend his

26   complaint to add as defendants the individuals he alleges were involved. Therefore, Daniel will be

27   able to pursue claims against these people for their alleged wrongdoing even if he is not permitted

28   to bring them into this federal lawsuit at the eleventh hour.

United States District Court
Northern District of California

8

Because Daniel lacks a reasonable excuse for failing to name the individuals long ago, because those individuals would be prejudiced by being brought into the case at this late stage, and because any prejudice to Daniel is minimized by his existing state court action, the motion for leave to amend to add the individual jailers is denied.

**IT IS SO ORDERED.**

Dated: April 3, 2015



_____
Vince Chhabria
United States District Judge

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GEORGE DANIEL,

           Plaintiff,

      v.

JOSEPH RICHARDS, et al.,

           Defendants.

Case No.  13-cv-02426-VC

**CERTIFICATE OF SERVICE**

     I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

     That on 4/3/2015, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

George  Daniel
c/o Jeff Koors
217 Barnett Street
Santa Rosa, CA 95407

Dated: 4/3/2015

Richard W. Wieking
Clerk, United States District Court

By:_____
Kristen Melen, Deputy Clerk to the
Honorable VINCE CHHABRIA